Your argument next in the United States v. Dominguez, 17-914. May it please the Court. Good morning, Your Honors. My name is Meredith Heller, and I represent Appellant Defendant Alvarado Dominguez. We are here today for two issues. First being whether or not Mr. Dominguez was prejudiced by not being able to thoroughly cross-examine the government's witness regarding testimony about a BB gun. I write that counsel elected for whatever reason not to pursue this theory and cross-examination that I think you're alluding to? Yes, you are correct. And if that's the case, then why is this claim or argument preserved for appeal? It's preserved because unlike Lucci and all the other cases I think where the record was not fully developed, the Court here has a very clear understanding of what the arguments were. So Ortiz and Lucci and these other cases that you are citing don't carve out that exception. They say you've got to make your record and preserve it, and if you don't do that, then it's not preserved for appeal. So why should we review this claim? You have this other argument, I understand, on collateral estoppel, but why do we have the authority to review this claim? Because both Lucci and Ortiz were dealing with prior convictions and whether or not, particularly in Lucci, whether or not the defendant would testify. They stated in that case that there were too many other ideas. So the theory, Ms. Heller, is that right now you're asking us to decide something based on an abstraction, based on something that didn't happen, which is a series of questions posed about or trying to elicit or trying to support the fake gun theory and objections and so on. And maybe the district court would have had an opportunity then to consider or reconsider, but we don't have any of that because counsel elected not to pursue it. We elected not to pursue it because it would be so clearly prejudicial. We did thoroughly brief the issue, though, and the court did issue an opinion on it. So I do think the dangers that Lucci and Ortiz were trying to prevent are not present in this case. I think that there is enough of a record and the dangers of the prejudicial nature of the evidence would have been so clear that the court can make a determination. Don't you agree, Ms. Heller, that there is no evidence of the outfall for us to consider? Your counsel did not take the step of making the argument and did not open the door, and you're asking us, one, to speculate, although maybe that's not difficult, about what counsel for your client would have done or how that counsel would have done it, but then asking us further to speculate what the government would have done in response. I mean, the government may have let it lie. There would be no issue at all. I think the government, and I can certainly let the government talk further about that, but I think the government made very clear that they would pursue the 2006 case. I think that there was no question, and that's really why I think that this particular instance does not fall under Ortiz and Lucci's, because the danger is so clear and the record was more developed. This is less of an ephemeral question as to what could have happened than a very clear question. Why did counsel not pursue the line of questioning? Because we felt that any reference to the 2006 discharge of a weapon would have been so prejudicial that it would have prevented Mr. Dominguez from getting a fair trial. That just by the mere mention that he had been involved, though never charged at the time of this trial, with a prior incident where there was a weapon discharge would be basically akin to propensity evidence that would tell the jury he is a guy who . . . You thought assuredly he would be convicted if that . . . Exactly. He was, without that evidence, convicted. Correct, Your Honor. The issue again is you've got to pursue your evidence, make your decisions, and sometimes those decisions, as you well know, Ms. Eller, I'm not telling you anything you don't know, those decisions may cut off the appellate route, but you make your decision. These are all strategic decisions, and they may be well-founded, but I'm not sure that you've sufficiently distinguished Luce and Ortiz and this line of cases that's pretty clear to me and that don't carve out an exception. So why don't you turn to the collateral estoppel double jeopardy issue? All right, Your Honor. The collateral estoppel double jeopardy issue is . . . this case is very unusual. We are now actually currently under a third indictment for conduct that the first and second one, this is the appeal of the second indictment, that the government has been aware of since they brought the first indictment. And I understand that . . . There's a current third indictment. There's a current third indictment actually regarding the 2006 incident now, currently pending before Judge Caproni. While I understand Witt and the other cases state that the government does not have to bring every charge they can at once, I do think that just for purposes of judicial economy, it makes no sense for them to not be stopped from bringing case after case after case against the same defendants and using that conduct, the prior for purposes of sentencing enhancements, and then charging that conduct. Are you making an argument about judicial economy or government economy? Well, let's go with government economy. It makes . . . That's the government. But also . . . If the government wants to spin its wheels, it can spin its wheels and go after the same person over and over and over again based on different conduct subject, of course, to the double jeopardy rules. But this instance clearly falls under at least the ideals of double jeopardy, if not even the exact, because they are two different instances. I'm not arguing that it was part of . . . Two different conspiracies, two different . . . But it was all part of the same overarching group of people, the same acts over the same periods of time. But you acknowledge that you can have the same group of people over overlapping periods of time, but two different conspiracies. I acknowledge that. I do, however, argue that to use the conspiracies . . . Oh, and I see my time is almost up. But to use the same conspiracies over and over for sentencing enhancement falls under the third prohibition outlined by the Supreme Court for double jeopardy, that he's being punished repeatedly. And it really appears that what's happening here is the government is unhappy with the sentence, and so they're trying again and again and again. But the Supreme Court has said punish repeatedly for the same crime, and it's a different crime. Aren't these arguments, and then I'll let you sit down, or we can let you sit down. Aren't these arguments better made in the subsequent cases if, in fact, those are brought and to be tried? And these arguments were made in this case that we're here on appeal from . . . What the government had awareness of would not be further charged. Oh, but the plea doesn't say that. The plea does not say that. The integration clause in the plea that . . . I'm familiar with the integration clause, but it defies logic for the government to keep attempting the same charges, the same defendants, over and over. It has the impression that the government is trying to get several bites at the apple, that they were unhappy with . . . I think I might be wrong, and this is, of course, the subject of further discussion with my colleagues, but my sense is that we've dealt with the concern that you are asking us to address by saying it's okay, and maybe the better way is to say that defense counsel and the government should have a conversation about justice and what's the just result. But as a technical matter, when you ask us to focus on collateral estoppel and double jeopardy, Witt and these other cases seem to preclude what you're asking us to do. But you . . . we've got your argument, and we'll hear from the government. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is Hagen Scotten. I'm an assistant United States attorney in the Southern District of New York. I represent the government here. I also represented the government in the case below. What is it about Mr. Dominguez that makes him so special that you keep indicting him? I will sort of try to lay out the series of indictments, Your Honor. Mr. Dominguez and really this broader crew he is a part of, first came to the government's attention by virtue of a series of very sophisticated pharmacy burglaries, over 200 in the tri-state area that they were committing. And that was the subject of the other conspiracy charge and conviction. Right. That was the first case before Judge Carter. In the course of investigating those pharmacy burglaries, we learned that really those pharmacy burglaries were only a portion of the crimes and not the most serious ones this group committed. It turned out they had their inception doing home invasion robberies usually of drug dealers. In this case, it was a numbers operation. And the pharmacy burglaries were sort of actually they branched out from that when they realized they could also steal pharmaceuticals. They didn't have to go after drug dealers who were often more dangerous. But the armed home invasions were much more serious conduct in terms of violence. The pharmacy burglaries, although daring in scope, were conducted in the middle of the night in unoccupied commercial establishments. No one was harmed. No one was threatened. No one was tied up. That's this case in front of Judge Pauly. That was the pharmacy burglaries. This case in front of Judge Pauly is a home invasion targeting an illegal numbers operation where people were tied up, beaten, threatened with a gun. So that was more serious conduct than was charged before Judge Carter. And Ms. Seller mentioned a third indictment. So there is now a third indictment before Judge Caproni, the lead count of which is a racketeering count. This case before Judge Pauly was a single incident, this single home invasion. After we completed that case, we were able to gather enough proof to show that there's actually been dozens of these home invasions committed by a much larger group. There are 13 defendants before Judge Caproni over a much longer period of time. And there's certainly a lot of unpunished conduct out there. In particular, with respect to Mr. Dominguez, although the 2006 robbery never came up in the case before Your Honor, in the case that was before Judge Pauly, there was a murder committed during that, and there should be vindication for that, and that is charged before Judge Caproni. So the reason Mr. Dominguez got charged a third time is because he was involved in a murder which he has never previously been prosecuted for. I'll note that some of the other defendants before Judge Pauly, although they were part of this same crew, were not recharged before Judge Caproni because they had essentially committed more of the same, other home invasions but no one was killed. But this was a murder? But this was a murder and there had never previously been a vindication of it, which is why it was, one of the reasons it was charged before Judge Caproni. Besides the arguments that you've made in your brief, Mr. Scotton, do you have anything else? No, Your Honor. We'll rest on our brief. Thank you very much. We'll reserve the decision.